Wright, J.
The issue in the case was this: McClure claimed that he made the trade of a horse for a wagon with Plenkle, and Henkle was to pay him the boot which is sought to be recovered. Henkle claims that, though he was present, the trade was made, not with him, but with Hedges. The simple question, then is : With whom was the trade made? With Henkle or with Hedges?
Henkle, in order to throw the liability upon Hedges, offered to prove that the estate of John McClure was in fact indebted to Hedges, and that plaintiff, the administrator and father of John McClure, knew all about said indebtedness, admitted it, and the boot money was to offset it. The evidence as to the fact of this indebtedness was what ivas admitted against objection. The purpose of the testimony was this: Henkle wanted to show the likelihood of his story by showing that John McClure’s estate owed Hedges, and that Hedges wanted the boot money to go against this debt, thus paying himself; therefore it was probable that he made the trade, instead of Henkle, who had no such motive.
Doubtless it was competent to give in evidence what occurred at the trade. If Samuel McClure then admitted that his son’s estate owed Hedges, and agreed that such indebtedness should go against the boot money, this might be shown as being part of the agreement which was actually made, and by which the parties must abide. But when it comes to the further proposition that there was such a debt in point of fact existing, this we think entirely a collateral matter and foreign to the issue. Nothing of the kind is alluded to in the pleadings, and, if it were, we still can not *207 see how it would be admissible. The point of controversy was : Did Hedges owe Samuel McClure ? And it does not tend to elucidate this matter by showing that John McClure’s estate owed Hedges. It would cull upon the court and jury to investigate the state of affairs between the McClure estate and Hedges, and thus the inquiry would proceed, not to the investigation of the case between plaintiff' and defendant, but between defendant and a third person not a party to the action. The trouble attending such a procedure is shown by the case before us. As soon as Hedges was allowed to show that John McClure’s estate did owe him, then the plaintiff proposed to go into the whole state of accounts between John McClure and Hedges, who had been in partnership, to prove that in point of fact no such indebtedness existed. The proposal involved not only the partnership, but also the individual accounts of McClure and Hedges. Such an investigation might be interminable, and was certainly irrelevant here. We are all of opinion, therefore, that the evidence as to- the fact of this alleged indebtedness was inadmissible.
But it is claimed that if the evidence was improperly admitted, the charge of the court did away -with any harm such admission might have occasioned.
The court did not squarely rule the evidence out, though they did say that, whether the indebtedness existed or not, was not of itself material in the case; but proceed further to say what might have misled the jury into believing that the fact itself might be corroborative of the claim of one party or the other, according as that fact was found to exist or not. It is stated that if no such indebtedness was supposed or admitted by him to exist, it would be a circumstance tending to corroborate his claim. Inasmuch as the court had allowed the evidence to be heard, and a vigorous contest had been made on the subject, the jury might have thought that if there had been no such debt, plaintiff could neither have supposed nor admitted its existence. They would naturally, therefore, consider the fact of the indebtedness as affording the shortest way out of the difficulty.
*208 And, upon the other hand, it was said that if such indebtedness existed, was admitted by plaintiff, and he desired to pay it, this would tend to corroborate the defendant, Hedges. The fact of the indebtedness is here placed first in order of the facts, as seeming to be the one of chief importance, upon which all the others hinged, as upon the supposition of its existence, the further circumstances of its admission, and the desire to pay it, might seem to follow, when they would not upon a contrary hypothesis.
In conclusion, the court say: “ But though such indebtedness existed, and was claimed by Hedges, yet if the plaintiff' did not admit it, or, admitting, yet was unwilling to pay it in the manner it is claimed by the defendant to have been paid, such indebtedness would be no evidence tending to corroborate the making of such contract, as if claimed by the defendant to have been made by the plaintiff.”
It is true that this comes about as near to ruling the testimony out as can be done without actually doing it. But the fact that it was not actually done might have led the jury to suppose the reason therefor was sufficient. It is difficult to tell what effect evidence once admitted may have upon the triers of fact, but the impression made by hearing what the court has declared to be competent testimony can hardly be removed by anything short of a flat direction that it must be disregarded. Even then it can not always be known that tbe direction of the court is followed.
To a majority of the court it appears that the effect of the incompetent testimony was not dissipated by the charge of the court, and the judgment of the district court is affirmed.